IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JEFF MORAN, | ) |
| Plaintiff | ) ) ) ) |
| v. | ) Civil Case No. 21-1167 |
| DAWSON FEDERAL, INC.; D7, INC.; D7 LLC, dba DAWSON D7; DAWSON; HAWAIIAN NATIVE CORPORATION | ) ) ) ) ) |
| Defendants | ) ) ) ) ) |

**COMPLAINT**

**JURY TRIAL DEMANDED**

**INTRODUCTION**

1. This action is brought by Plaintiff, Jeff Moran ("**Plaintiff**"), who alleges that Defendants Dawson Federal, Inc.; D7, Inc.; D7 LLC, dba DAWSON D7; DAWSON; and Hawaiian Native Corporation ("**Defendants**") treated him adversely and retaliated against him, ultimately causing the termination of his employment, because Plaintiff reported, refused to engage in, and made other efforts to stop Defendants' fraudulent and unlawful conduct. This case involves Plaintiff's protected reports of Defendants' fraudulent proposal to obtain a government contract.

2. Specifically, Plaintiff reported that the Department of Defense may have awarded a government contract to Defendants on the basis of one or more false representations that Defendants had made in their Proposal for the contract.

1

3. Plaintiff believes, and in good faith reported, that Defendants' conduct resulted in, among other things, Defendants being awarded a government contract based on one or more false representations that Defendants had made in their Proposal for the contract.

4. Plaintiff alleges retaliation and wrongful discharge in violation of the federal False Claims Acts (FCA); the Virginia Fraud Against Taxpayers Act, Va. Code § 8.01-216.8; Virginia statute prohibiting retaliatory action against employees, Va. Code Ann. § 40.1-27.3; and Virginia's prohibition of wrongful discharge in violation of public policy.

## JURISDICTION AND VENUE

5. This action arises, in part, under the False Claims Act § 3729 et seq. This Court has original subject matter jurisdiction over this civil matter pursuant to 28 U.S.C. § 1331 and § 1345, as well as 31 U.S.C. § 3732(a), which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730. This Court has supplemental jurisdiction over the state law retaliation and wrongful discharge claims pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b).

6. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391, as the facts relevant to this matter, including Plaintiff's employee onboarding orientation, project kick-off meeting, and team planning and execution meetings, occurred at Defendants' McLean, Virginia office.

## PARTIES

7. Plaintiff Jeff Moran is a citizen of the United States, and a resident of Arlington, Virginia. Plaintiff worked for Defendants as a Deputy Program Manager assigned to Defendants' Mclean, Virginia office, from approximately June 15, 2021 to July 21, 2021, when he was terminated from his employment due to Defendants' retaliatory actions against him and in furtherance of his efforts to stop Defendants' fraudulent conduct.

8.      Defendant DAWSON companies—collectively known as DAWSON—are subsidiaries of Defendant Hawaiian Native Corporation (HNC), a Native Hawaiian Organization (NHO) federally-certified by the U.S. Small Business Administration. The HNC's 9 for-profit subsidiaries, collectively known as DAWSON, according to DAWSON's website, are:

    Dawson Technical – NHO-Owned Small Business
    Dawson Federal – NHO-Owned Firm
    Dawson Solutions – SBA Certified NHO-Owned 8(a) Small Business
    Dawson Enterprises – SBA Certified NHO-Owned 8(a) Small Business
    Dawson Global – NHO-Owned Small Business
    Dawson D7 – SBA Certified NHO-Owned 8(a) Small Business
    Dawson AKT – SBA Certified NHO-Owned 8(a) Small Business
    Dawson BH Company – SBA Certified NHO-Owned HUBZone Small Business
    Five Three Two Three Concepts – NHO-Owned Small Business

9.      According to its website, DAWSON is a Native Hawaiian global business enterprise serving the U.S. Department of Defense and other Federal Government clients.

10.     Operating worldwide, DAWSON, according to the website, is headquartered in Honolulu, Hawaii with offices across the U.S.

11.     Since 2004, according to its website, DAWSON has contracted with the U.S. Department of Defense (DOD) and other U.S. Federal Government agencies. DAWSON identifies its Core services as Professional & Technical Services, Construction, and Environmental Services.

<strong><u>STATUTORY AND REGULATORY CONTEXT</u></strong>

**The False Claims Act's Retaliation Protections**

12.     The FCA prohibits retaliation against an employee "because of lawful acts done by the employee, . . . in furtherance of an action under this section or other efforts to stop 1 or more violations" of the FCA.[1] 31 U.S.C. § 3730(h).

---

[1] The FCA protects the government's fiscal interests by imposing liability upon any person who: (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claims . . ." 31 U.S.C. § 3729(a)(1)(A)-(B).

13. As Congress explained, 31 U.S.C. § 3730(h) covers:

> . . . retaliation against not only those who actually file a qui tam action, but also against those who plan to file a qui tam action that never gets filed, who blow the whistle internally or externally without the filing of a qui tam action, or who refuse to participate in the wrongdoing; . . . this subsection protects . . . steps taken to remedy the misconduct through methods such as internal reporting to a supervisor or company compliance department and refusing to participate in the misconduct that leads to the false claims, whether or not such steps are clearly in furtherance of a potential or actual qui tam action.

Speech of Hon. Howard L. Berman, Rep. Cal., concerning Fraud Enforcement and Recovery Act of 2009, 155 Cong. Rec. E1295-03, 2009 WL 1544226, at *E1300.

14. Accordingly, although Defendants' underlying conduct is relevant, Plaintiff can succeed in an FCA retaliation claim without proving an actual violation of the FCA.

15. The Virginia Fraud Against Taxpayers Act, Va. Code § 8.01-216.8 (the "VFATA") contains the same prohibition against retaliation.

## FACTS

A. **Background: Defendants Must Comply with Applicable Laws and Regulations in Order to Receive Government Payments.**

16. As a business enterprise serving the U.S. Department of Defense and other Federal Government clients, Defendants must ensure that each and every claim submitted as part of a Proposal to procure a contract with the Government is truthful.

17. As a business enterprise serving Federal Government clients, Defendants must also ensure that their contracts with the Federal Government clients under which payment is made are not procured by means of false statements or other corrupt or fraudulent conduct to induce the Federal Government to award it contracts.

18. When submitting contract proposals to procure government contracts, Defendants must not misrepresent their company's capabilities, key personnel, or personnel who will perform the Government-funded contract in order to bolster the strength of their proposals.

4

A. **Defendants' award of a government contract to provide information technology (IT) services to the Uniform Services University of the Health sciences (USU).**

19. On June 15, 2021, Defendants began providing certain information technology (IT) services to the Uniform Services University of the Health sciences (USU) in Bethesda, Maryland, as part of Defendants' contract with an agency of the U.S. Department of Defense (DOD).

20. Defendants' federal contract is Task Order HU000121F0027 of Indefinite Delivery/Indefinite Quantity (IDIQ) contract HU000121D0003.

21. DOD awarded the Task Order to Defendants in response to a Task order Technical Proposal (IT and Information Support Management Services HU0001R0024), which Defendants submitted to DOD on or about June 8, 2021.

22. The fees payable to Defendants under the Task Order are just under $500,000.

23. The potential fees under the IDIQ contract are much greater. According to the DOD's announcement/press release, the contract amount was capped with a "maximum ceiling/face value of $47,500,000 for information technology and information management support services in support of the Chief of Information Office at the Uniformed Services University of the Health Sciences."

24. A significant component of the project under this Task Order is for Defendants to recruit and hire personnel over a period of 90 days to provide Defendants' IT services to USU.

25. As part of Defendants' obligations under the contract with DOD to provide IT services to USU, Defendants needed to validate requirements for, and recruit approximately 45 employees.

26. Defendants' Proposal to DOD had described the demands of the 90-day recruiting phase of the Project and made representations about Defendants' resources on-hand to conduct this recruiting.

27. Defendants had represented to DOD in the Proposal that Defendants would "initially look internally for exceptional, qualified candidates holding requisite skills and qualifications that match those required for this effort," and that "simultaneously," Defendants would "initiate a full-court recruitment effort for external candidates."

28. Additionally, while declaring that "DAWSON uses several methods for our recruiting needs," Defendants had specifically represented to DOD that Defendants' "significant strength" was their "20+ bench of recruiters," with "experience in recruiting for scientific, engineering, management, technology, computer science, administration and other disciplines."

29. The cover page of the Proposal documented that Defendants "agree[d] to abide by all terms, conditions, and provisions included" in the Proposal.

30. Plaintiff had no involvement in Defendants' preparation of the Proposal or in negotiation of the IDIQ or Task Order and did not begin working until the start date of the Project, which was June 15, 2021.

  **C. Plaintiff's Employment with Defendants**

31. On or about June 8, 2021, Defendants hired Plaintiff as a Deputy Program Manager, reporting to Shane Clayton, to be employed by D7 LLC and work with the federal health management consulting team of Defendants' Professional and Technical Services division.

32. To begin his employment with Defendants on June 15, 2021, Plaintiff relocated from Minnesota, where his wife and one of his children still live, to Arlington, Virginia.

33. Defendants hired Plaintiff to work on the project in which Defendants were to provide certain information technology (IT) services to the Uniform Services University of the Health sciences (USU) in Bethesda, Maryland.

34. On Plaintiff's first day of employment, Defendants held a kickoff meeting at their McLean, Virginia office with USU representatives to begin the Project. At this meeting, Defendants identified Plaintiff as the "Project Manager" of the Project.

35. None of the employees Defendants assigned to work for Plaintiff on the project had any expertise in recruiting or human resources.

36. When Plaintiff reached out to his superiors for recruiting support, he learned that Defendants employ at most only two or three recruiters.

37. Representatives of USU expressed concern to Plaintiff about Defendants' slow pace in recruiting personnel for the Project and conveyed Defendants' history of false promises about recruiting. Plaintiff relayed these concerns to his superiors and proposed that Defendants hire more recruiters, but Plaintiff was belittled for having unrealistic expectations of an 8A disadvantaged small business.

**D.  Plaintiff Reports and Refuses to Engage in Fraudulent and Unlawful Conduct**

38. Plaintiff was not provided a copy of the Proposal on which the Project is based until July 12, 2021. On July 14, 2021, Plaintiff expressed concern to Sidney Vowell, a manager in Defendants' Human Resources department, that Defendants may have overstated the size of their recruiting team in the Proposal to DOD.

39. At 8:15 a.m. EDT on July 21, 2021, Plaintiff emailed Ms. Vowell a copy of the Proposal, in which Defendants had represented that the company's "significant strength" was Defendants' team of 20+ recruiters. Plaintiff relayed to Ms. Vowell his concern that DOD may

7

have awarded the task order to Defendants on the basis of one or more false representations in Defendants' Proposal.

40. Ms. Vowell called Plaintiff at 10:12 a.m. EDT on July 21, 2021, and confirmed that Defendants' representation in the Proposal of their 20+ recruiters was false, and she told Plaintiff that leaders within Defendants had advised her that the representation was a "mistake."

### E. Defendants Retaliate Against Plaintiff

41. At 3:30 p.m. EDT on July 21, 2021, Plaintiff was informed by phone that Defendants were terminating his employment effective immediately. The explanation Plaintiff was given by phone was that Defendants wished to "take a different direction" on management of the Project.

42. During the phone call terminating him, Plaintiff was emailed a letter that he was terminated "due to performance issues," with no explanation or identification of such issues.

### COUNT I
### RETALIATION IN VIOLATION OF
### THE FEDERAL FALSE CLAIMS ACT

Plaintiff realleges each and every paragraph of this Complaint.

43. The FCA imposes liability upon "any person who - - (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. . ." 31 U.S.C. § 3729(a)(1)(A) and (B).

44. The FCA further provides that "any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an

action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1).

45. The phrase "false or fraudulent claim" within the statute includes fraud surrounding the efforts to obtain a contract.

46. The phrase "efforts to stop" within the statute includes reporting suspected misconduct to internal supervisors.

47. As set forth in detail in the preceding paragraphs, by reason of Defendants' misrepresentation to DOD in the Proposal to procure a Government Contract that Defendants have a "20+ bench of recruiters" with "experience in recruiting for scientific, engineering, management, technology, computer science, administration and other disciplines," Defendants knowingly presented, or caused to be presented, false or fraudulent claims of the company's capabilities, key personnel, or personnel who will perform the Government-funded contract, in violation of the FCA.

48. As also set forth in detail in the preceding paragraphs, Defendants discharged, threatened, harassed, or in any other manner discriminated against Plaintiff in the terms and conditions of his employment because of his lawful acts and efforts to stop Defendants' violations of the FCA, all in violation of 31 U.S.C. § 3730(h)(1).

49. As a direct result of Defendants' unlawful retaliatory and discriminatory conduct in violation of 31 U.S.C. § 3730(h), Plaintiff has suffered damages for which he is entitled to relief under 31 U.S.C. § 3730(h)(2).

## COUNT II
## RETALIATION IN VIOLATION OF THE
## VIRGINIA FRAUD AGAINST TAXPAYERS ACT

Plaintiff realleges each and every paragraph of this Complaint.

50. The Virginia Fraud Against Taxpayers Act, Va. Code § 8.01-216.8 ("VFATA") imposes liability upon "Any person who: (1) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. . ." Va. Code § 8.01-216.3(a)(1) and (2).

51. The VFATA further provides that "Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of an action under this article or other efforts to stop one or more violations of this article." Va. Code § 8.01-216.5.

52. As set forth in detail in the preceding paragraphs, by reason of Defendants' misrepresentation to DOD in the Proposal to procure a Government Contract that Defendants have a "20+ bench of recruiters" with "experience in recruiting for scientific, engineering, management, technology, computer science, administration and other disciplines," Defendants knowingly presented, or caused to be presented, false or fraudulent claims of the company's capabilities, key personnel, or personnel who will perform the Government-funded contract, in violation of the VFATA.

53. As also set forth in detail in the preceding paragraphs, Defendants discharged, threatened, harassed, or in any other manner discriminated against Plaintiff in the terms and conditions of his employment because of his lawful acts and efforts to stop Defendant's violations of the FCA, all in violation of the VFATA.

54. As a direct result of Defendants' unlawful retaliatory conduct, Plaintiff has experienced damages for which he is entitled to relief under the VFATA.

**COUNT III**
**WHISTLEBLOWER RETALIATION**
**IN VIOLATION OF**
**VA. CODE § 40.1-27.3**

Plaintiff realleges each and every paragraph of this Complaint.

55. For purposes of the Virginia statute prohibiting whistleblower retaliation against employees, Va. Code § 40.1-27.3, the term, "employee" means "any person who, in consideration of wages, salaries or commissions, may be permitted, required or directed by any employer to engage in any employment directly or indirectly." Va. Code § 40.1-2.

56. For purposes of the Virginia statute prohibiting whistleblower retaliation against employees, Va. Code § 40.1-27.3), the term, "employer" means "an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission . . ." Va. Code § 40.1-2.

57. At all times material herein, Plaintiff and Defendants stood in the relationship of employee and employer within the meaning of the Va. Code § 40.1-27.3.

58. Va. Code § 40.1-27.3 provides, in relevant part, "An employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee. . . in good faith reports a violation of any federal or state law or regulation to a supervisor . . ." Va. Code § 40.1-27.3 (A)(1).

59. As set forth in detail in the preceding paragraphs, by reason of Defendants' misrepresentation to DOD in the Proposal to procure a Government Contract that Defendants have

11

a "20+ bench of recruiters" with "experience in recruiting for scientific, engineering, management, technology, computer science, administration and other disciplines," Defendants knowingly presented, or caused to be presented, false or fraudulent claims of the company's capabilities, key personnel, or personnel who will perform the Government-funded contract, in violation of the FCA and VFATA.

60. As also set forth in detail in the preceding paragraphs, Defendants discharged, threatened, harassed, or in any other manner discriminated against Plaintiff in the terms and conditions of his employment because of his lawful acts and efforts to stop Defendant's violations of the FCA, all in violation of the FCA and VFATA.

61. As a direct result of Defendants' violation of Va. Code § 40.1-27.3, Plaintiff has sustained damages including loss of earnings and earning capacity, and has suffered and will continue to suffer emotional distress, embarrassment, humiliation, and loss of self-esteem. Plaintiff has also incurred attorneys' fees and expenses and other related damages. Plaintiff has experienced damages for which he is entitled to relief under Va. Code § 40.1-27.3.

## COUNT IV
## WRONGFUL DISCHARGE
## IN VIOLATION OF PUBLIC POLICY

62. The foregoing allegations are incorporated as if re-alleged herein.

63. Virginia recognizes a cause of action for wrongful discharge in violation of public policy, which protects individuals who, like Plaintiff, have been discharged for his lawful acts and efforts to stop Defendants' violations of the FCA and VFATA. *See Bowman v. State Bank of Keysville, et al.,* 229 Va. 534 (1985).

64. The retaliatory discharge remedy provided by Virginia common law is in addition to any corollary protections provided by statue addressing the same set of operative facts.

65. As set forth in detail in the preceding paragraphs, Defendants discharged, threatened, harassed, or in any other manner discriminated against Plaintiff in the terms and conditions of his employment because of his lawful acts and efforts to stop Defendants' violations of federal and state law, including the FCA and VFATA.

66. As a direct result of Defendants' conduct, Plaintiff has sustained loss of earnings and earning capacity, and has suffered and will continue to suffer emotional distress, embarrassment, humiliation, and loss of self-esteem. Plaintiff has also incurred attorneys' fees and expenses and other related damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jeff Moran requests that this Court:

A. Enter judgment for Plaintiff and against Defendants jointly and severally;

B. Award prejudgment interest to Plaintiff;

C. Award Plaintiff statutory attorney's fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d) and Va. Code § 40.1-2;

D. Award Plaintiff, with respect to his federal and state retaliation claims and claim of wrongful discharge in violation of public policy: 1. Two times the amount of back pay that he would have had but for the retaliation, and interest on the back pay; 2. Compensation for all damages, including emotional distress, sustained as a result of the retaliation and discharge, in an amount to be determined at trial; 3. Front pay in an amount to be determined at trial; 4. Punitive damages; 5. Litigation costs and reasonable attorneys' fees.

E. Grant such other relief as the Court may deem just, necessary, and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Civil Rule 38 of the Local Rules of the United States District Court for the Eastern District of Virginia, Plaintiff hereby demands a trial by jury.

Dated: October 15, 2021

HALUNEN LAW

/s/ *Clayton D. Halunen*
Clayton D. Halunen
HALUNEN LAW
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
halunen@halunenlaw.com

*Pro Hac Vice Pending*

and

/s/ *Robert W. Lannnan*
Robert W. Lannan (VSB #78111)
LANNAN LEGAL PLLC
1717 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 223-8901
Facsimile: (202) 747-7760
robert.lannan@lannanlegal.com

ATTORNEYS FOR PLAINTIFF